IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLIFFORD HODSON, SR., as      :
Administrator of the ESTATE OF   :    **CIVIL ACTION NO.:**
NICHOLAS LEROY HODSON a/k/a  :
NICHOLAS HODSON,            :
                                :
        Plaintiff,          :    **COMPLAINT**
                                :    **AND DEMAND FOR**
        v.               :    **JURY TRIAL**
                                :
MEGHA MANEK, M.D., MARINE    :
KHOJABEKYAN, M.D., JAMES WALSH, :
M.D., DAVID HERLAN, M.D., THE   :
ROBERT PACKER HOSPITAL, ROBERT :
PACKER HOSPITAL/GUTHRIE      :
HEALTHCARE SYSTEM AUXILIARY,  :
GUTHRIE MEDICAL GROUP, P.C. f/k/a :
GUTHRIE CLINIC LTD., GUTHRIE   :
CLINIC, A PROFESSIONAL       :
CORPORATION, GUTHRIE CLINICS  :
GROUP PRACTICE PARTNERSHIP,   :
L.L.P., THE GUTHRIE CLINIC f/k/a  :
GUTHRIE HEALTH, GUTHRIE     :
HEALTHCARE SYSTEM f/k/a GUTHRIE :
MEDICAL CENTER, GUTHRIE      :
MEDICAL GROUP OF PENNSYLVANIA,:
P.C., GUTHRIE CLINIC INC. and    :
GUTHRIE CLINIC LTD.,        :
                                :
        Defendants.        :

## COMPLAINT

Plaintiff, Clifford Hodson, Sr., as Administrator of the Estate of Nicholas

Leroy Hodson a/k/a Nicholas Hodson, files this Complaint against Defendants

Megha Manek, M.D., Marine Khojabekyan, M.D., James Walsh, M.D., David

Herlan, M.D., The Robert Packer Hospital, Robert Packer Hospital/Guthrie

Healthcare System Auxiliary, Guthrie Medical Group, P.C. f/k/a Guthrie Clinic

Ltd., Guthrie Clinic, A Professional Corporation, Guthrie Clinics Group Practice

Partnership, L.L.P., The Guthrie Clinic f/k/a Guthrie Health, Guthrie Healthcare

System f/k/a Guthrie Medical Center, Guthrie Medical Group of Pennsylvania,

P.C.,  Guthrie Clinic Inc, and Guthrie Clinic Ltd.:

## NATURE OF THE ACTION

1.     This is a medical malpractice and wrongful death case arising out of

the tragic death of Nicholas Hodson.  Mr. Hodson was 17 years old at the time of

his death.  On April 11, 2012, Mr. Hodson was admitted to Robert Packer Hospital

with persistent symptoms of pneumonia.  He was diagnosed with a pleural

empyema, which is a collection of pus in the pleural cavity surrounding the lungs.

An empyema is a life-threatening condition requiring long-term drainage with

clinical monitoring and long-term treatment with antibiotics that provide broad,

empiric coverage for multiple infectious organisms.  The defendants, however,

curtailed Mr. Hodson's treatment by discharging him on April 17, 2012 without

adequately draining the empyema, without sufficient clinical monitoring and

without providing adequate antibiotic treatment.  At approximately 3:30 a.m. on

April 18, 2012, Mr. Hodson's family observed him with extreme shortness of

breath, coughing up copious amount of blood and he went into full cardiac arrest.

He died at approximately 6:02 a.m. An autopsy revealed multiple infectious organisms throughout Mr. Hodson's system, including his lungs and brain, and the cause of death was determined to be sepsis with acute right lobar pneumonia and empyema. Mr. Hodson's untimely death could have been prevented with proper medical care.

## PARTIES

2.     Plaintiff, Clifford Hodson, Sr., is an individual residing at 53 Joe Green Road, Erin, NY 14838. Plaintiff is the father of decedent, Nicholas Leroy Hodson and is the Administrator of the Estate of Nicholas Leroy Hodson a/k/a Nicholas Hodson, deceased, having been appointed by the Surrogate Court of the State of New York, County of Chemung at Elmira, New York on February 5, 2014 at No. 2014-13.

3.     Defendant Megha Manek, M.D. is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and currently practicing medicine at Robert Packer Hospital, One Guthrie Square, Sayre, PA 18840. At all relevant times Defendant Manek was practicing medicine as a family medicine specialist. Upon information and belief, Defendant Manek is a resident of the Commonwealth of Pennsylvania. Plaintiff is asserting a professional liability claim against this Defendant.

4.     Defendant Marine Khojabekyan, M.D. is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and currently practicing medicine at 1600 E. Citrus Avenue, Suite A, Redlands, CA 92374.  At all relevant times Defendant Khojabekyan was practicing medicine as a family medicine specialist at Robert Packer Hospital, One Guthrie Square, Sayre, PA 18840.  Upon information and belief, Defendant Khojabekyan is a resident of the state of California.  Plaintiff is asserting a professional liability claim against this Defendant.

5.     Defendant James Walsh, M.D. is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and currently practicing medicine at Robert Packer Hospital, One Guthrie Square, Sayre, PA 18840.  At all relevant times Defendant Walsh was practicing medicine as a pulmonary medicine specialist.  Upon information and belief, Defendant Walsh is a resident of the Commonwealth of Pennsylvania.  Plaintiff is asserting a professional liability claim against this Defendant.

6.     Defendant David Herlan, M.D. is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and currently practicing medicine at Robert Packer Hospital, One Guthrie Square, Sayre, PA 18840.  At all relevant times Defendant Herlan was practicing medicine as a Cardiothoracic Surgery specialist.  Upon information and belief, Defendant Herlan is a resident of the

Commonwealth of Pennsylvania. Plaintiff is asserting a professional liability claim against this Defendant.

7.     Defendant The Robert Packer Hospital is a Pennsylvania non-profit corporation or other business entity operating in the Commonwealth of Pennsylvania at One Guthrie Square, Sayre, PA 18840. This Defendant owns, manages and/or operates healthcare facilities and outpatient centers, including but not limited to Robert Packer Hospital. Plaintiff is asserting a professional liability claim against this Defendant.

8.     Defendant Robert Packer Hospital/Guthrie Healthcare System Auxiliary is a Pennsylvania non-profit corporation or other business entity operating in the Commonwealth of Pennsylvania at one Guthrie Square, Sayre, PA 18840. This Defendant owns, manages and/or operates healthcare facilities and outpatient centers, including but not limited to Robert Packer Hospital. Plaintiff is asserting a professional liability claim against this Defendant.

9.     Defendant Guthrie Medical Group, P.C. f/k/a Guthrie Clinic Ltd. is a Pennsylvania professional corporation operating in the Commonwealth of Pennsylvania at One Guthrie Square, Sayre, PA 18840. This Defendant owns, manages and/or operates healthcare facilities and outpatient centers, including, but not limited to Robert Packer Hospital. Plaintiff is asserting a professional liability claim against this Defendant.

10.     Defendant Guthrie Clinic, A Professional Corporation, is a Pennsylvania professional corporation or other business entity operating in the Commonwealth of Pennsylvania at One Guthrie Square, Sayre, PA 18840. This Defendant owns, manages and/or operates healthcare facilities and outpatient centers, including, but not limited to Robert Packer Hospital. Plaintiff is asserting a professional liability claim against this Defendant.

11.     Defendant Guthrie Clinics Group Practice Partnership, L.L.P. is a Pennsylvania limited liability partnership or other business entity operating in the Commonwealth of Pennsylvania at One Guthrie Square, Sayre, PA 18840. This Defendant owns, manages and/or operates healthcare facilities and outpatient centers, including, but not limited to Robert Packer Hospital. Plaintiff is asserting a professional liability claim against this Defendant.

12.     Defendant The Guthrie Clinic f/k/a Guthrie Health is a Pennsylvania non-profit corporation or other business entity operating in the Commonwealth of Pennsylvania at One Guthrie Square, Sayre, PA 18840. This Defendant owns, manages and/or operates healthcare facilities and outpatient centers, including, but not limited to Robert Packer Hospital. Plaintiff is asserting a professional liability claim against this Defendant.

13.     Defendant Guthrie Healthcare System f/k/a Guthrie Medical Center is a Pennsylvania non-profit corporation or other business entity operating in the

Commonwealth of Pennsylvania at One Guthrie Square, Sayre, PA 18840. This

Defendant owns, manages and/or operates healthcare facilities and outpatient

centers, including, but not limited to Robert Packer Hospital. Plaintiff is asserting

a professional liability claim against this Defendant.

14.    Defendant Guthrie Medical Group of Pennsylvania, P.C. is a

Pennsylvania professional corporation or other business entity operating in the

Commonwealth of Pennsylvania at One Guthrie Square, Sayre, PA 18840. This

Defendant owns, manages and/or operates healthcare facilities and outpatient

centers, including, but not limited to Robert Packer Hospital. Plaintiff is asserting

a professional liability claim against this Defendant.

15.    Defendant Guthrie Clinic Inc is a Pennsylvania corporation or other

business entity operating in the Commonwealth of Pennsylvania at One Guthrie

Square, Sayre, PA 18840. This Defendant owns, manages and/or operates

healthcare facilities and outpatient centers, including, but not limited to Robert

Packer Hospital. Plaintiff is asserting a professional liability claim against this

Defendant.

16.    Defendant Guthrie Clinic Ltd. is a Pennsylvania professional

corporation or other business entity operating in the Commonwealth of

Pennsylvania at One Guthrie Square, Sayre, PA 18840. This Defendant owns,

manages and/or operates healthcare facilities and outpatient centers, including, but

not limited to Robert Packer Hospital.  Plaintiff is asserting a professional liability claim against this Defendant.

17.     Defendants The Robert Packer Hospital, Robert Packer Hospital/Guthrie Healthcare System Auxiliary, Guthrie Medical Group, P.C. f/k/a Guthrie Clinic Ltd., Guthrie Clinic, A Professional Corporation, Guthrie Clinics Group Practice Partnership, L.L.P., The Guthrie Clinic f/k/a Guthrie Health, Guthrie Healthcare System f/k/a Guthrie Medical Center, Guthrie Medical Group of Pennsylvania, P.C., Guthrie Clinic Inc and Guthrie Clinic Ltd. (hereinafter referred to collectively as the "Robert Packer Hospital Defendants") were at all relevant times acting by and through their actual and/or ostensible agents and employees, who were at all times acting in the course and scope of their agency and/or employment, including but not limited to Megha Manek, M.D., Marine Khojabekyan, M.D., James Walsh, M.D., David Herlan, M.D., Aaditya Singhal, M.D., Abhash Joshi, M.D., Keith Sharpton, M.D., Sarah Carter, M.D., Sanjay A. Samy, M.D., Christopher Joy, M.D., Richard Zwirko, M.D., Douglas Green, M.D., Richard Foster, M.D. and Sumblina Chaudhary, M.D. as well as the other doctors, nurses and other health care providers who provided medical care to Nicholas Hodson.

## JURISDICTION

18.     This Court has jurisdiction under 28 U.S.C. § 1332 as the adverse

parties are completely diverse in citizenship and the amount in controversy exceeds

$75,000.00 exclusive of interest and costs.

19.     Venue is proper in the United States District Court for the Middle

District of Pennsylvania under 28 U.S.C. §1391(b)(2), as a substantial part of the

events or omissions giving rise to the claim occurred here.

## OPERATIVE FACTS

20.     On March 28, 2012, decedent Nicholas Leroy Hodson was a 17 year

old male who presented to his family care physician with flu-like symptoms.  He

was thought to have influenza and was treated conservatively.

21.     On April 2, 2012, Mr. Hodson underwent a chest x-ray that was read

to show a right upper lobe process consistent with pneumonia.  He was started on

Zithromax (an antibiotic) and prednisone.

22.     Mr. Hodson's symptoms continued to worsen and on April 5, 2012 he

presented to the emergency department of Robert Packer Hospital with complaints

of chest pain.  He was placed on a higher dose of prednisone and was advised to

complete the course of Zithromax.

23.    Mr. Hodson completed the course of Zithromax but his symptoms persisted. He returned to his primary care physician on April 11, 2012 and was advised to go to Robert Packer Hospital for further evaluation and treatment.

24.    On April 11, 2012, Mr. Hodson presented to Robert Packer Hospital with complaints that included persistent cough with yellow expectorant that was tinged with blood, shortness of breath, fever with chills and rigors, chest pain, diarrhea, and abdominal pain. He was diagnosed with persistent/refractory pneumonia with secondary atelectasis of the right lower lobe and was admitted for further evaluation.

25.    Mr. Hodson was admitted to the Family Medicine Service under Defendant Manek. In addition to the symptoms set forth in the preceding paragraph, the report of the history and physical examination on admission reflects that Mr. Hodson appeared morbidly ill and had an abnormally high white blood cell count.

26.    Defendant Manek's treatment plan included intravenous Avelox, an antibiotic that does not provide broad, empiric coverage for multiple infectious organisms. Various cultures were also ordered to determine the nature of Mr. Hodson's infection.

27.    On or about April 12, 2012 Defendant Walsh was consulted as a pulmonary medicine specialist and thereafter provided medical care and treatment to Mr. Hodson.

28.    On or about April 12, 2012 Defendant Herlan was consulted as a thoracic surgery specialist and thereafter provided medical care and treatment to Mr. Hodson.

29.    The medical records reflect that as of April 12, 2012, a CT of the chest revealed a right pleural effusion and enlarged lymph nodes in the chest and lung. A pleural effusion is a collection of excess fluid in the pleural space surrounding the lung.

30.    The fluid seen on CT was believed to be an empyema, which is a life-threatening condition requiring long-term drainage and long-term treatment with antibiotics that provide broad, empiric coverage for multiple infectious organisms.

31.    It was determined that Mr. Hodson would undergo a right-sided video-assisted thoracic surgery (VATS) procedure with drainage of empyema the next day.

32.    On April 13, 2012, Mr. Hodson underwent the VATS procedure and drainage of the empyema.

33.    The pleural fluid that was collected during the VATS procedure was sent for culture. According to the medical records, the defendants were at that time

"[a]waiting results to decide right antibiotics." Until then, Mr. Hodson was to continue on Avelox.

34.    A chest tube was inserted at the time of the VATS procedure and it was noted after the procedure that the chest tube was draining reddish, serosanguinous fluid. A serosanguinous fluid is fluid tinged with blood.

35.    As of April 14, 2012, Defendant Khojabekyan was designated as Mr. Hodson's attending physician. The medical records reflect that on that date the chest tube continued to drain reddish fluid. Although Mr. Hodson no longer had a fever, his white blood cell count remained abnormally high.

36.    On April 15, 2012, it was noted in the medical records that Mr. Hodson's neck was swollen since the day before. The chest tube continued to drain reddish/serosanguinous fluid and his white blood cell count remained abnormally high.

37.    Mr. Hodson was discharged to home by Defendant Khojabekyan on April 17, 2012 at approximately 10:00 a.m. with a diagnosis of empyema right lung. Defendants Walsh and Herlan agreed and/or recommended that Mr. Hodson be discharged.

38.    At the time of discharge, the swelling in Mr. Hodson's neck had not fully resolved or been fully diagnosed.

39.     At the time of discharge, the cultures of the pleural fluid collected on April 13, 2012 had not been completed.  Thus, the Defendants discharged Mr. Hodson without knowing if the antibiotics provided were adequate to treat his infection.

40.     At the time of discharge, the microbiological cause of Mr. Hodson's empyema and/or the nature of the underlying infection had not been determined.

41.     At the time of discharge, the only antibiotic treatment recommended was that Mr. Hodson take 400 mg tablets of Avelox daily until May 16, 2012.

42.     According to the medical records, the chest tube was removed the day before Mr. Hodson was discharged despite the fact that the chest tube continued to drain reddish fluid.  The Defendants discharged Mr. Hodson without carefully observing him for an adequate period of time after removal of the chest tube.

43.     At approximately 3:30 a.m. on April 18, 2012 (less than 24 hours after he was discharged from Robert Packer Hospital), Mr. Hodson's family observed him unable to breath and he was coughing up copious amounts of blood. He was taken by ambulance to St. Joseph's Hospital in Elmira, New York, where he presented in full cardiac arrest.  Mr. Hodson died at approximately 6:02 a.m. on April 18, 2012.

44.     An autopsy was conducted and the cause of Mr. Hodson's death was determined to be sepsis due to multiple infectious organisms throughout Mr. Hodson's system, including his lungs and brain.

## COUNT I
## MEDICAL NEGLIGENCE – ALL DEFENDANTS

45.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

46.     Defendants had a duty to Nicholas Hodson to provide medical care and treatment in a safe manner in accordance with acceptable medical standards.

47.     Defendants undertook and/or assumed a duty to Nicholas Hodson to render reasonable, competent, proper, adequate and appropriate medical and diagnostic care, advice, services and treatment and to take appropriate measures to avoid harm to him.

48.     Defendants breached their duty of care to Mr. Hodson.

49.     The negligence and carelessness of Defendants, their officers, doctors, nurses, agents, servants or employees, consisted of the following:

    a.    Failing to consult or recommend consultation with an infectious disease specialist when Defendants knew or should have known that Mr. Hodson required such specialty care;

    b.    Failing to transfer or recommend that Mr. Hodson be transferred to a health care facility with an infectious disease specialist when they knew or should have known that he required such specialty care;

c.  Failing to adequately and properly treat Mr. Hodson's empyema with a long-term course of antibiotics to provide broad, empiric coverage for multiple infectious organisms;

d.  Failing to adequately and properly treat Mr. Hodson's empyema with appropriate long-term drainage and clinical monitoring;

e.  Failing to adequately and properly diagnose and/or treat Mr. Hodson's septic condition;

f.  Discharging or recommending that Mr. Hodson be discharged without knowing the final results of cultures that were ordered;

g.  Discharging or recommending that Mr. Hodson be discharged without knowing whether the antibiotics administered were sufficient to treat Mr. Hodson's ongoing infection;

h.  Discharging or recommending that Mr. Hodson be discharged when the swelling in his neck had not fully resolved or been fully diagnosed;

i.  Discharging or recommending that Mr. Hodson be discharged when they knew or should have known that he still had a life-threatening lung infection;

j.  Discharging or recommending that Mr. Hodson be discharged without determining the underlying microbiological cause of his lung infection and/or empyema;

k.  Discharging or recommending that Mr. Hodson be discharged when they knew or should have known that the observed draining of reddish/serosanginous fluid from his chest tube up to or near the time of discharge indicated a life-threatening condition;

l.  Discharging or recommending that Mr. Hodson be discharged without carefully observing Mr. Hodson for an adequate period of time after removal of his chest tube; and

m.   Discharging or recommending that Mr. Hodson be discharged when they knew or should have known that he was at risk of developing sepsis.

50.   The negligence and carelessness of defendants increased the risk of harm and/or was the factual cause of the harm, injuries, and damages sustained by the decedent, including but not limited to his death and the anxiety, fear, pain and suffering and conscious awareness of the impending death suffered by decedent before his death, and the loss of earnings and earning capacity suffered by decedent from the date of his death until such time in the future that he probably would have lived had he not died as a result of the injuries he sustained by reason of the negligent acts and/or omissions of defendants, and the loss of "inheritance" and the total limitation and deprivation of his normal activities, pursuits and pleasures from the date of his death until such time in the future as he probably would have lived had he not died as a result of the injuries sustained by the negligent acts and/or omissions of Defendants.

WHEREFORE, Plaintiff Clifford Hodson Sr., Administrator of the Estate of Nicholas Leroy Hodson a/k/a Nicholas Hodson, Deceased, claims of Defendants, jointly and severally, a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and lawful interest thereon, the costs of suit, and any other relief the Court deems just and reasonable.

## COUNT II
## CORPORATE NEGLIGENCE – ROBERT PACKER HOSPITAL DEFENDANTS

51.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

52.     The Robert Packer Hospital Defendants owed a duty to Nicholas Hodson to ensure his safety and well-being while at the hospital.

53.     The Robert Packer Hospital Defendants breached their duties to Mr. Hodson.

54.     The negligence and carelessness of the Robert Packer Hospital Defendants consisted of the following:

a.     Failing to use reasonable care in the maintenance of a safe and adequate facility in that defendants failed to employ, grant privileges to, or otherwise have available appropriately qualified infectious disease specialists;

b.     Failing to select and retain competent physicians including the physicians who provided medical care to Mr. Hodson and appropriately-qualified infectious disease specialists;

c.     Failing to oversee all persons who practice medicine within its walls in that they knew or should have known of the negligent and inadequate medical care provided to Mr. Hodson as alleged in Count I yet failed to take appropriate corrective action;

d.     Failing to formulate, adopt, and enforce adequate rules and policies to ensure that patients in need of infectious disease specialty care would be referred or transferred to such a specialist or that such a specialist would otherwise be consulted;

e.     Failing to formulate, adopt, and enforce adequate rules and policies regarding management of patients requiring antibiotic medicines;

f.     Failing to formulate, adopt, and enforce adequate rules and policies regarding management of patients who require insertion of chest tubes and/or drainage of empyema;

g.     Failing to formulate, adopt, and enforce adequate rules and policies regarding discharge of patients with pending cultures;

h.     Failing to formulate, adopt and enforce adequate rules and policies regarding treatment of empyema and/or serious infections; and

i.     Failing to formulate, adopt and enforce adequate rules and policies regarding discharge of patients with empyema and/or serious infections.

55.     The Robert Packer Hospital Defendants knew or should have known of the above breaches of their duties to Mr. Hodson.

56.     The negligence and carelessness of the Robert Packer Hospital Defendants increased the risk of harm and/or was the factual cause of the harm, injuries, and damages sustained by the decedent, including but not limited to his death and the anxiety, fear, pain and suffering and conscious awareness of the impending death suffered by decedent before his death, and the loss of earnings and earning capacity suffered by decedent from the date of his death until such time in the future that he probably would have lived had he not died as a result of the injuries he sustained by reason of the negligent acts and/or omissions of defendants, and the loss of "inheritance" and the total limitation and deprivation of

his normal activities, pursuits and pleasures from the date of his death until such time in the future as he probably would have lived had he not died as a result of the injuries sustained by the negligent acts and/or omissions of Defendants.

WHEREFORE, Plaintiff Clifford Hodson Sr., Administrator of the Estate of Nicholas Leroy Hodson a/k/a Nicholas Hodson, Deceased, claims of Defendants, jointly and severally, a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and lawful interest thereon, the costs of suit, and any other relief the Court deems just and reasonable.

**COUNT III**
**WRONGFUL DEATH ACTION BY CLIFFORD**
**HODSON, SR. AS ADMINISTRATOR OF THE ESTATE**
**OF NICHOLAS LEROY HODSON a/k/a NICHOLAS HODSON**

57.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

58.    Plaintiff, Clifford Hodson, Sr. is the legal representative of the Estate of his son, Nicholas Hodson.  Plaintiff brings this wrongful death action by virtue of 42 Pa. C.S.A. § 8301 and Pennsylvania Rule of Civil Procedure 2202 and claims all benefits of the Wrongful Death Act on his behalf and all other persons entitled to recover under the law including, but not limited to the following:

a.    An amount that will cover all hospital, medical, funeral, burial, and estate administration expenses incurred;

b.     An amount that will fairly and adequately compensate the family of the decedent for their loss of any contributions and support they would have received from the decedent had he lived, including but not limited to all amounts of money that the decedent would have spent for or given to his family for such items as shelter, food, clothing, medical care, education, entertainment, gifts, and recreation;

c.     An amount that will fairly and adequately compensate the decedent's family for the monetary value of the services, society, and comfort that he would have given to his family had he lived, including such elements as work around the home, provision of physical comforts and services, and provision of society and comfort.

59.    At no time during his lifetime did Plaintiff's decedent bring an action for his personal injuries and no other action for his death has been commenced against Defendants.

WHEREFORE, Plaintiff Clifford Hodson Sr., Administrator of the Estate of Nicholas Leroy Hodson a/k/a Nicholas Hodson, Deceased, claims of Defendants, jointly and severally, a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and lawful interest thereon, the costs of suit, and any other relief the Court deems just and reasonable.

## COUNT IV
## SURVIVAL ACTION BY CLIFFORD
## HODSON, SR.AS ADMINISTRATOR OFTHE ESTATE
## OF NICHOLAS LEROY HODSON a/k/a NICHOLAS HODSON

60.    Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs, as though fully set forth herein.

61.     Plaintiff, Clifford Hodson, Sr., as Administrator of the Estate of his

deceased son, Nicholas Leroy Hodson a/k/a Nicholas Hodson, also brings this

action by virtue of the Survival Act, 42 Pa. C.S.A. §8302, and claims all benefits of

the Survival Act on behalf of all persons entitled to recover under law, including

but not limited to the following:

a.     The amount the decedent would have earned had he lived, including
        but not limited to gross earnings and fringe benefits; and

b.     An amount that will fairly and adequately compensate for the mental
        and physical pain, suffering, and inconvenience and loss of life's
        pleasures that the decedent endured from the moment of injury to the
        moment of his death.


WHEREFORE, Plaintiff Clifford Hodson Sr., Administrator of the Estate of

Nicholas Leroy Hodson a/k/a Nicholas Hodson, Deceased, claims of Defendants a

sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory

damages and lawful interest thereon, the costs of suit, and any other relief the

Court deems just and reasonable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues raised in this Complaint.

Respectfully Submitted,

Dated:      March 31, 2014

Jack A. Meyerson
jmeyerson@meyersonlawfirm.com
James A. Wells
jwells@meyersonlawfirm.com
MEYERSON & O'NEILL
1700 Market Street, Suite 3025
Philadelphia, PA 19103
(215)-972-1376

*Attorneys for Plaintiff*